IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ALAN H. DUGAN, et al., <br> Plaintiffs, <br><br> v. <br><br> TOWERS, PERRIN, FORSTER & CROSBY, INC., et al., <br> Defendants. | CIVIL ACTION <br><br> No. 2:09-cv-5099 |

**Goldberg, J.**                                                             September 24, 2013

**MEMORANDUM OPINION**

**Introduction**

The parties in this consolidated action return to this Court on limited remand from the United States Court of Appeals for the Third Circuit seeking preliminary approval of their proposed settlement, along with a schedule to notify class members and eventually procure final approval of the settlement after an appropriate hearing. Along with approval of the settlement, they also seek preliminary certification of their proposed settlement class. For the following reasons, the motion will be granted.

**Factual Background and Procedural History**

The facts surrounding this matter are set forth in the Court's Memorandum Opinion granting summary judgment to Defendants (Doc. No. 203), and will not be repeated here. Briefly, this case concerns three complaints filed against Towers, Perrin, Forster & Crosby, Inc. ("Towers Perrin") by former employee-shareholders who sold their Towers Perrin shares back to the company after 1971, but before the firm merged with Watson Wyatt to form Towers Watson

1

& Co., a publicly traded company. (Mem. Op. 2, 8-9.) For much of its history, Towers Perrin was privately owned by its employees, who, upon promotion to "Principals," were permitted to purchase stock from the company at a greatly-reduced book value, as long as they agreed to resell the shares to the firm at book value upon retirement. (Mem. Op. 2-3.) Because the book value was much lower than the price the shares would have brought on the open market, the firm was able to sell shares to the new Principals at affordable rates, and also ensure that it would always have enough funds to repurchase the shares when the Principal's employment came to an end. (Mem. Op. 2-3 & n.3.) Former Principals who had already resold their shares lost out, however, once the shares became publicly traded, and their value skyrocketed.

These cases all alleged that implicit in the sale-and-buyback arrangement was an additional promise: that Towers Perrin would remain employee-owned. (Mem. Op. 9.) Plaintiffs contended that in conducting what was essentially a public sale of the company, the current Principals breached that agreement. (Mem. Op. 9.) This Court concluded that there was no such promise, and granted summary judgment to Defendants. On appeal, and after consultation with the Third Circuit's Chief Mediator, the parties reached a settlement agreement. The agreement provides for a gross settlement fund of $10 million plus interest, to be split among the proposed class members according to the employee's tenure and the number of shares he or she held at the time of separation from the firm.

**Discussion**

The Court must address both the preliminary certification of the proposed settlement class and the preliminary approval of the proposed settlement. Because it makes little sense to assess the reasonableness of the settlement without reference to a defined class, the former will be discussed first.

### A. Preliminary Certification of the Settlement Class

Plaintiffs seek only the certification of a settlement class, not a litigation class, but that does not relieve the Court of the responsibility to ensure that the proposed class satisfies the Federal Rules of Civil Procedure. As a general matter, "[s]ettlement classes must satisfy the Rule 23(a) requirements of numerosity, commonality, typicality, and adequacy of representation." In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Products Liability Litig., 55 F.3d 768, 778 (3d Cir. 1995). In addition, the class must satisfy the relevant requirements of F.R.C.P. 23(b), though obviously the court "need not inquire whether the case, if tried, would present intractable management problems." Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 620 (1997).

Plaintiffs seek to certify a class consisting of "all former Towers Perrin Principals . . . who retired or otherwise terminated their service with Towers Perrin and ceased to be Principals on or after January 1, 1971 and on or prior to June 1, 2005," with several exceptions. (Br. in Support of Mot. 4.) The proposed class excludes any Principals who: (1) received or will receive any consideration arising from the merger with Watson Wyatt, (2) participated in the Voluntary Separation Program,[1] (3) signed a release of claims in favor of Towers Perrin in connection with the sale of stock back to the firm, (4) were employees of Towers Perrin or Watson Wyatt at the time of the merger, or (5) are current employees of Towers Watson. (Br. in Support of Mot. 4-5.)

As defined, preliminary certification of the class is appropriate. Plaintiffs estimate that the proposed settlement class includes 1,050 individuals, a number that satisfies the requirement that the class be "so numerous that joinder of all members is impracticable." F.R.C.P. 23(a)(1);

---

[1] As explained in the opinion granting summary judgment, the Voluntary Separation Program was instituted in 2006 following the announcement that Towers Perrin was considering a public sale in an effort to encourage Principals "to retire at normal age" rather than remain with Towers Perrin in hopes that a sale would boost the value of their shares. Principals who participated in the program received book value for their shares, along with $200,000 and the right to purchase discounted shares of Towers Perrin stock if an initial public offering occurred within three years of their retirement. (Mem. Op. 7.)

see also Stewart v. Abraham, 275 F.3d 220, 226-27 (3d Cir. 2001) ("[G]enerally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met."); Mehling v. N.Y. Life Ins. Co., 246 F.R.D. 467, 474 (E.D. Pa. 2007) (citing cases).

Furthermore, common questions of law and fact exist between the individual class members. F.R.C.P. 23(a)(2). The primary issue in this litigation is whether, in selling and repurchasing the stock from class members, Towers Perrin made an enforceable promise to keep the firm employee-owned. And as our earlier opinion indicated, each class member received a similar "Stock Offer Letter" upon being promoted to a Principal, which set forth the "terms on which Towers Perrin offered to sell stock to Principals." (Mem. Op. 4.) Thus, this litigation includes common legal questions, the answers to which require reference to an essentially common set of facts. This provides the "necessary glue among class members to make adjudicating the case as a class worthwhile." Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 259 F.3d 154, 182 (3d Cir. 2001).

"The concepts of commonality and typicality are broadly defined and tend to merge." Barnes v. Am. Tobacco Co., 161 F.3d 127, 141 (3d Cir. 1998) (quoting Baby Neal v. Casey, 43 F.3d 48, 56 (3d Cir. 1994)) (internal quotation marks omitted). The named plaintiffs' claims are typical if they "arise[] from the same event or practice or course of conduct that gives rise to the claims of the class members," and are based on the same legal theory. Id. Here, the named Plaintiffs' claims satisfy the typicality requirement for essentially the same reason that they satisfy the commonality requirement. Each named Plaintiff asserts claims based on an alleged promise made by Towers Perrin in the conduct of its stock sale-and-buyback program. The class members' claims arise from the same course of conduct. Thus, F.R.C.P. 23(a)(3) is satisfied.

Finally, F.R.C.P. 23(a)(4) requires that the "representative parties will fairly and adequately protect the interests of the class." This requirement seeks to ferret out "conflicts of interest between named parties and the class they seek to represent," and is satisfied if the representative "possess[es] the same interest[s] and suffer[s] the same injur[ies] as the class members." Amchem, 521 U.S. at 625-26 (quoting East Texas Motor Freight Sys., Inc. v. Rodriguez, 431 U.S. 395, 403 (1977)) (internal quotation marks omitted). The named Plaintiffs in this case plainly satisfy this requirement, in that their claims are typical of the absent class members' claims, and there are no apparent conflicts of interest. See Mehling, 246 F.R.D. at 475. Further, the attorneys for the class have proven themselves equal to the task, vigorously litigating this case from start to finish. In other words, they "clearly possess the expertise to litigate this matter effectively, as evidenced by the quality, timeliness and professional nature of their work before this court." In re Ikon Office Solutions, Inc., 209 F.R.D. 94, 103 (E.D. Pa. 2002).

In addition to meeting the Rule 23(a) requirements, the proposed class can be properly certified under Rule 23(b)(3). Our earlier opinion sets out the controlling nature of the common questions of law and fact in this litigation: the claims of all class members rise or fall together. This is more than enough to satisfy the predominance inquiry, which merely tests whether a class action "would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated." F.R.C.P. 23(b)(3) advisory committee notes to 1966 amendment; see also Sullivan, 667 F.3d at 297. Given the common threads tying all the class members' claims together, class adjudication is plainly superior to hundreds of individual cases challenging essentially the same conduct. This is even truer in the settlement class context, since minor differences in individual claims that might create practical problems at trial are less important when the proposal is that there be no trial. See Sullivan, 667 F.3d at 303-04.

Therefore, the Court will grant Plaintiffs' motion for preliminary certification of the settlement class.

**B. Preliminary Approval of the Proposed Settlement**

Under the Federal Rules of Civil Procedure, "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." F.R.C.P. 23(e). This requirement exists to allow the court to protect absent class members who will be bound by the settlement, but did not have an opportunity to participate in its negotiation. Rodriguez v. Nat'l City Bank, 2013 WL 4046385 at *5 (3d Cir. Aug. 12, 2013); Sullivan, 667 F.3d at 319. While the ultimate approval of a class settlement turns on whether the court finds the proposal "fair, reasonable, and adequate," F.R.C.P. 23(e)(2), preliminary approval may be granted as long as the proposal does not "disclose[] grounds to doubt its fairness or other obvious deficiencies such as unduly preferential treatment of class representatives or segments of the class, or excessive compensation for attorneys, and whether it appears to fall within the range of possible approval." Mehling, 246 F.R.D. at 472 (quoting Thomas v. NCO Fin. Sys., 2002 WL 1773035 at *5 (E.D. Pa. July 31, 2002)) (internal quotation mark omitted).

The settlement in this case is fairly simple. Towers Perrin will make a single payment of $10 million into a claims fund to be administered by an outside fiduciary. Court-approved attorney's fees, expenses, and administrative costs will be paid from this fund, leaving a net amount for class members of approximately $6 million. Class members will be given notice of the settlement and the opportunity to submit a proof of claim. The proceeds from the fund will then be split among the class members who submitted valid claims according to a formula that

accounts for the number of shares the class member sold back to the firm at the time of his or her separation, as well as the member's tenure.[2]

At this stage, the settlement appears within the bounds of reasonableness warranting preliminary approval. While the $10 million recovery reflects but a fraction of the increased value from the public sale, Plaintiffs were fighting an uphill battle by the time the settlement was reached. This Court had granted summary judgment as to all claims against all Defendants, leaving Plaintiffs with a substantial chance of receiving no recovery at all. Plaintiffs faced an uncertain outcome in the Third Circuit, followed by more litigation in this Court, if they hoped to obtain a favorable judgment. This lengthy process would have resulted in significant cost and delay. When compared to the relatively immediate and certain recovery promised by the settlement, there is good reason to think that the recovery is fair. In addition, the participation of the Third Circuit's mediator suggests an arms-length negotiation, rather than collusion for the benefit of attorneys or named plaintiffs. See Mehling, 246 F.R.D. at 473 (granting preliminary approval to class settlement that was "the result of a hard-fought and lengthy negotiation process overseen by [a] Magistrate Judge"). Class counsel's requested compensation, which Plaintiffs' represent will be no more than $3 million (not including expenses), or 30% of the total fund, also falls within the bounds of reasonableness. See id. at 472 n.4 (granting preliminary approval to class settlement that provided for attorney's fees of not more than 33% of the gross settlement fund).

---

[2] More specifically, a given class member's recovery will be calculated by multiplying the net settlement fund by a fraction that accounts for the number of "share years" the member accumulated in comparison to the body of claimants as a whole. The amount of "share years" accumulated by a member is equal to the number of years the member was a Towers Perrin Principal multiplied by the number of shares the member sold back to Towers Perrin at the time he or she left the firm.

Thus, the Court finds no reason at this stage to doubt the fairness of the settlement, and will grant preliminary approval. Of course, prior to deciding whether to grant final approval, the Court will hold a fairness hearing and consider the views of objectors, if any. See Manual for Complex Litig. (Fourth) § 21.643 (2004).

**C. Notice**

Having granted preliminary certification of the settlement class, along with preliminary approval of the settlement itself, the Court "must direct notice in a reasonable manner to all class members who would be bound by the proposal." F.R.C.P. 23(e)(1). Due process requires that the notice be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950). Further, F.R.C.P. 23(c)(2)(B) requires that in a Rule 23(b)(3) action, the class must receive "the best notice that is practicable under the circumstances." In the context of a class settlement, the substance of the notice "must inform class members of (1) the nature of the litigation; (2) the settlement's general terms; (3) where complete information can be located; and (4) the time and place of the fairness hearing." In re Cendant Corp. Sec. Litig., 109 F. Supp. 2d 235, 254 (D.N.J. 2000); see also F.R.C.P. 23(c)(2)(B).

After reviewing the proposed notice, the Court concludes that it satisfies due process in form and substance. Plaintiffs propose notification by "mailing the Notice to each Class Member for whom Towers Watson has a mailing address and publishing the Notice on a website maintained by the Claims Administrator." (Br. in Support of Mot. 18.) Individual notice by first-class mail is the best notice practicable in this case, and has long been considered to satisfy due process in the class-action context. See Phillips Petrol. Co. v. Shutts, 472 U.S. 797, 812 (1985)

(concluding that a procedure in which "a fully descriptive notice is sent first-class mail to each class member, with an explanation of the right to 'opt-out,' satisfies due process"); In re Agent Orange Prod. Liability Litig., 818 F.2d 145, 167-69 (2d Cir. 1987) (finding notice mailed to more than 70,000 veterans in Agent Orange registry, plus publication, sufficient); Wright and Miller, Federal Practice and Procedure § 1786 & n.43 (citing several cases involving mailed notice). Further, publication on a website devoted to the litigation will allow class members an alternative route to receive notice.

Substantively, the sixteen page notice adequately informs the class members of all the information required by F.R.C.P. 23(c)(2)(B). It covers the nature of the case and the claims, defines the class, and indicates to the class member that he or she can seek to be excluded from the class, can file objections, or can seek assistance from an independent attorney. It also explains in detail the nature of the settlement and the formula that will ultimately be used to allocate payments. Finally, it includes spaces to notify members of their right to participate in a final fairness hearing on a particular date. The Court will therefore approve the notice and manner of service.

**Conclusion**

The Plaintiffs return to this Court seeking approval for a $10 million dollar settlement after having lost on summary judgment less than a year ago. Although this recovery is far less than Plaintiffs originally sought, the procedural posture of the case, along with the threat of further lengthy and costly litigation, make the settlement reasonable on its face. In addition, the proposed class is properly defined, and satisfies the requirements of F.R.C.P. 23. Accordingly, Plaintiffs' motion for preliminary certification of the settlement class and preliminary approval of the settlement will be granted. The Court's Order follows.